IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-01129-PAB-MJW

OSIEL RODRIGUEZ,

Petitioner,

v.

R.  WILEY,

Respondent.

---

**RECOMMENDATION ON
AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241
(Docket No. 7)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This matter is before this court pursuant to an Order of Reference to United States Magistrate Judge issued on September 8, 2009, by District Judge Philip A. Brimmer.  (Docket No. 16).

Petitioner, Osiel Rodriguez, is a federal prisoner who is incarcerated at USP Florence in Colorado.  Before the court for a report and recommendation is the petitioner's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (hereinafter "the petition") (Docket No. 7).  Respondent filed a Response to Order to Show Cause (Docket No. 19) to show cause why the court should deny the petition.  Petitioner filed an "Answer in Response" (Docket No. 21) and two exhibits (Docket Nos. 22 and 23).

The court has considered all of these filings as well as applicable Federal Rules of Civil Procedure, statutes, and case law and has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions of law, and recommendation. Because the petitioner is proceeding without counsel, the court has "construe[d] his pleadings liberally, but [has not] act[ed] as his advocate." Ford v. Pryor, 552 F.3d 1174, 1178 (10th Cir. 2008).

Petitioner asserts that during a disciplinary hearing on December 13, 2006, while housed in USP Atwater in California, the disciplinary hearing officer ("DHO") did not allow him to present documentary evidence on his behalf and was not a fair and impartial trier of fact or independent from the wishes and motives of his accuser at USP Atwater. He was found guilty of the charge and was sanctioned to, among other things, loss of 41 days of good conduct time and a disciplinary transfer to the higher security "supermax" ADX facility in Florence.

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied "without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment."'" Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting Ponte v. Real, 471 U.S. 491, 495 (1985); Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir. 1991)). The Supreme Court, however, held in Wolff v. McDonnell, 418 U.S. 539, 556 (1974), that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Thus, "in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible

to manipulation, and preserving the disciplinary process as a means of rehabilitation."

Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445, 454-55 (1985).

Under Wolff, in order to meet the standards of due process in a prison disciplinary

proceeding,

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Id. at 454.  Furthermore, the requirements of procedural due process are met if there is

just "some evidence" to support the decision to revoke good time credits.  Id.; Mitchell,

80 F.3d at 1445.  "Ascertaining whether this standard is satisfied does not require

examination of the entire record, independent assessment of the credibility of witnesses

or weighing of the evidence.  Instead, the relevant conclusion is whether there is **any**

**evidence** that could support the conclusion reached by the disciplinary [hearing

officer]."  Hill, 472 U.S. at 455-56 (emphasis added).

Finally, "[a]n impartial decisionmaker is a fundamental requirement of due

process" and "should be decided on a case-by-case basis."  Gwinn v. Awmiller, 354

F.3d 1211, 1220 (10th Cir. 2004) (citing Wolff, 418 U.S. at 592).  "[D]ue process is

satisfied as long as no member of the disciplinary board has been involved in the

investigation or prosecution of the particular case, or has had any other form of personal

involvement in the case."  Wolff, 418 U.S. at 592.  "[B]ecause honesty and integrity are

presumed on the part of a tribunal, there must be some substantial countervailing

reason to conclude that a decisionmaker is actually biased with respect to factual issues

being adjudicated." <u>Gwinn</u>, 354 F.3d at 1220 (quotations omitted). "Due process is violated only when the risk of unfairness is intolerably high' under the circumstances of a particular case." <u>Id.</u> (quotations omitted).

Here, this court finds that the petitioner's hearing met the <u>Wolff</u> due process standards, that there was some evidence to support the conclusion reached, and that petitioner has not shown a "substantial countervailing reason" to conclude that the hearing office was actually biased with respect to the factual issues being adjudicated.

**Advance Written Notice.** First, petitioner was given advance written notice of the disciplinary charge. The Incident Report was served on the petitioner on November 2, 2006 (Docket Nos. 19-2 at 1 and 19-5 at 1), and the hearing was held more than one month later on December 13, 2006 (Docket No. 19-5 at 1).

**Witnesses and Documentary Evidence.** Petitioner admits that written statements from his two inmate witnesses were provided at the disciplinary hearing. (Docket No. 21 at 2-3; see Docket No. 19-5 at 3, DHO report, summarizing witness statements by inmates Rene Lopez and Solache). Petitioner, however, asserts that his due process rights were violated by the DHO because petitioner's three alleged attempts to present documentary evidence on his behalf, which apparently notwithstanding his witness statements was purportedly the only evidence he had, were allegedly denied by the DHO. (Docket No. 7 at 2). He claims the DHO told him that his "evidence" was "'technical, irrelevant bull[expletive]" to her." (Docket No. 7 at 2 and 4). Petitioner states:

> At said hearing, I attempted on three ocasions [sic] to present
> documentary evidence in my defense. Specifically, (1) Bureau of Prisons

Program Statement 5270.7, governing the process of inmates detained in the special housing unit . . . Said program statement details: "The warden shall prepare an administrative detention order detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate. . . Staff shall deliver this order to the inmate within 24 hours of the inmate's placement in administrative detention..." (NOTE: I was detained in SHU on April 11, 2006, and did not receive detail for my detention, on an administrative detention order or in any other form, for 204-days. Only on Nov. 2, 2006, via incident report, was I informed of the reasons for my detention); and (2) a written account of my defense which enumerated gaping legal deficiencies within the incident report (not the least of these deficiencies was/is the fact that the acusing [sic] officer, who is said to have discovered items durring [sic] a cell search which lead to me being charged with attempted escape; is not identified in the incident report... nor anywhere else in the record of this case).

(Docket No. 7 at 4). Petitioner states that after he outlined the "evidence" he intended to present and the reasons he thought it was pertinent to his defense, the DHO stated that it was irrelevant and that petitioner was not to bring up those things to her again because she was not going to consider them or put them in the record. (Docket No. 7 at 4).

This court finds that the petitioner has not stated a due process violation. A prisoner's right to call and present witnesses and documentary evidence is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 812 (10th Cir. 2007) (quoting Baxter v. Palmigiano, 425 U.S. 308, 321 (1976); Wolff, 418 U.S. at 556). Under Wolff, in order to meet the standards of due process in a prison disciplinary proceeding, a prisoner must be given the opportunity to present documentary evidence in his defense, but only "when consistent with institutional safety and correctional goals." Hill, 472 U.S. at 454. Therefore, just like the right to call witnesses at a prison disciplinary hearing, the right to

present evidence is not unrestricted. Documentary evidence could be properly disallowed when it is irrelevant. See Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993) (witness testimony properly disallowed where the inmate failed to show how the testimony would have supported the inmate's argument before the disciplinary committee).

In this case, while the petitioner allegedly sought to introduce the BOP Policy Statement concerning placement in administrative detention, such Policy Statement was not relevant to the issue before the DHO, namely, whether the petitioner committed the charged act. Furthermore, based upon this court's close reading of the petitioner's "supporting facts" in his petition, this court finds that what the petitioner was attempting to submit under number two was not "evidence." Rather, he was merely trying to submit his written arguments about the disciplinary charge and his placement in administrative segregation. Petitioner has not detailed any actual documentary "evidence" that was refused by the DHO. Furthermore, according to the petitioner, during the hearing he was able to outline these arguments and the reasons why he thought they were pertinent to his defense. In addition, the DHO's Report (Docket No. 19-5) makes references to some other "presentation and documentation" by the petitioner. Therefore, this court finds that the petitioner was given an opportunity to be heard. Under the circumstances presented, not permitting petitioner to submit his written arguments and a copy of the BOP Policy Statement does not constitute a due process violation.

**Written Statement of Evidence Relied Upon and Reasons.** The record further shows that the petitioner was provided with a written statement by the DHO of the

evidence relied on and the reasons for the disciplinary action.  (See Docket No. 19-5 at

2-5, DHO Report, "Specific Evidence Relied on to Support Findings (Physical Evidence,

observations, written documentation, etc.).").  In addition, a review of the DHO's

decision shows that there was some evidence that could support the ultimate finding

that petitioner was guilty of "escape (planning)."  Hill, 472 U.S. at 455-56.  "The decision

can be upheld even if the evidence supporting the decision is 'meager.'"  Mitchell, 80

F.3d at 1445 (citing Hill, 472 U.S. at 457).

**Impartial Hearing Officer.**  In Claim Two, petitioner asserts that the DHO "failed

to be a fair and impartial trier of fact, independent from the wishes/motives of my acusor

[sic] U.S.P. Atwater, durring [sic] my December 13, 2006, disciplinary hearing."  (Docket

No. 7 at 6).  He contends that he was kept in the prison's SHU for 204 days without

being given a reason and that thus the USP Ataters staff was at an impasse inasmuch

as they wanted to charge him with attempted escape but could not do so unless they

falsified or fabricated evidence via the charging document.  Their attempt to transfer him

to ADX Florence was allegedly denied due to the absence of a charge and conviction.

Therefore, according to the petitioner, they issued the incident report and  then days

later allegedly submitted him for a transfer/designation to ADX Florence which included

the incident report.  Petitioner claims that he stood before the DHO knowing that she

could only render a guilty verdict because only through a guilty verdict could she then

impose a sanction of a transfer to a higher-security facility like ADX Florence.  In

addition, petitioner asserts that after he attempted for a third time to present the

"evidence" he had brought, the DHO "rose up out of her chair and lunged toward me.

She stopped inches from my face, and in a very threatning [sic] mannor [sic], screamed

the following at the top of her lungs: I told you not to bring that technical irrelevant bull[expletive] up again!  If you do so one more time, I will terminate this hearing!  Do you understand me!?!"  (Docket No. 7 at 4-5).  It appears that petitioner is asserting that this purported response is evidence that the DHO was not fair and impartial.

As noted above, however, "because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." Gwinn, 354 F.3d at 1220 (quoting Redding v. Fairman, 717 F.2d 1105, 1112-13 (7th Cir. 1983)).  Here, petitioner has not presented some "substantial countervailing reason" to conclude that the DHO was actually biased.  Instead, petitioner merely presents rank speculation that the DHO was not "independent from the wishes/motives of my acusor [sic] U.S.P. Atwater."  In addition, there has been no showing that the DHO was involved in the investigation or prosecution of this case or had any other form of personal involvement.  Furthermore, even assuming the DHO had the alleged "outburst" after petitioner yet again ignored her warning and for a third time attempted to introduce his so-called "evidence," there is no evidence of partiality in this case.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the petitioner's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 **(Docket No. 7)** be **denied and dismissed**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date: June 3, 2010                              s/ Michael J. Watanabe
      Denver, Colorado                          United States Magistrate Judge